1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  DANIEL L. PORTILLO,                         CASE NO. CV-F-04-5269 OWW LJO

12              Plaintiff,                      **FINDINGS AND RECOMMENDATIONS RE**
                                                **MEMORANDUM DECISION AND ORDER**
13      vs.                                     **ON PLAINTIFF'S APPEAL FROM**
                                                **ADMINISTRATIVE DECISION (Doc. 20)**
14  JO ANNE BARNART,
    Commissioner of Social Security,

15              Defendant.

16  _____/

17          Plaintiff Daniel Portillo ("claimant") seeks judicial review of an administrative decision denying

18  his claim for Supplemental Security benefits under the Social Security Act, Title XVI ("Act").  Pending

19  before the Court is claimant's appeal from the administrative decision of the Commissioner of Social

20  Security ("Commissioner").

21          Claimant filed his complaint on February 11, 2004 and his opening brief on March 23, 2005. The

22  Commissioner filed her opposition to the appeal on May 24, 2005. Claimant did not file a reply brief.

23                          **BACKGROUND**

24                  **Administrative Proceedings**

25          Plaintiff was awarded of period of disability effective December 1997 due to schizophrenia.

26  (Administrative Record "AR" 73.)

27          By notice dated a June 14, 2002, plaintiff was notified that the Social Security Administration

28  had found that his condition had medically improved and that he was able to work.  (AR 273, 102-107.)

1   Plaintiff filed a June 17, 2002 Request for Reconsideration – Disability Cessation, and a disability

2   hearing was conducted on October 29, 2002 before a disability hearing officer.  (AR 119-128.)  On

3   October 31, 2002, the hearing officer determined that the claimant was able to work. (AR 116-118.)

4   Plaintiff's request was further denied by an Administrative Law Judge ("ALJ") in a decision issued on

5   October 30, 2003 that claimant's disability had ceased on June 1, 2002.  (AR 12-25.)  The Appeals

6   Council denied review. (AR 6-8.)  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. §

7   405(g).

8                    **Claimant's Background and Work Experience**

9          Claimant was born on August 13, 1977.  (AR 42.) Claimant has a high school equivalency

10  diploma.  (AR 42.)  Claimant does not have any past relevant work.

11                               **Medical History**

12         The pertinent medical history is summarized as follows.

13         Progress notes from Fresno Mental Health from March 2001 through August 2002 (AR 291-346)

14  showed claimant was eating and sleeping well, denied delusions, and denied auditory hallucinations, and

15  reported going to school to complete high school.  He reported disorganized thoughts at times.  (AR

16  343.) Claimant continually reported hyper salivation as a side affect to his medication. He reported mild

17  sedation in the mornings.  He reported socialization with others.  (AR 305, 318, 329, 333-334.)  In

18  March 2002, claimant denied confusion. (AR 305, 306, 313, 316.)  Claimant reported graduating and

19  planning to start college.  (AR 300.)

20         In treatment notes from October 2002 to September 2003 (AR 558-578), claimant denied

21  hallucinations, reported sleeping well, denied paranoia, and denied depression.  Treatment notes reported

22  good socialization with others.  (AR 569, 570, 572.)  He reported attending school, enjoying it, and

23  helping to build a barn.  He reported a frightening experience wherein another patient reported "hearing

24  voices" which reminded claimant of his own past experiences, but he got over it.  (AR 563.)

25         In June 2002, state agency psychologist Allen Middleton, Ph.D., reviewed the evidence.  (AR

26  493-494.)  Dr. Middleton concluded medical improvement.  (AR 494.)  Dr. Middleton noted that

27  claimant was able to successfully complete his GED and was now pursuing college courses.  (AR 494.)

28  Dr. Middleton found claimant capable of understanding, remembering and carrying out simple

instructions, able to concentrate and attend appropriately in an eight-hour workday and forty hour workweek; and would be able to relate and adapt within the unskilled work environment, but should avoid complex and technical tasks.  (AR 494, 511.)

In September 2002, State Agency physician, Marina Vea, M.D. reviewed the evidence.  (AR 475-476.)  She found claimant capable of understanding, remembering and carrying out simple instructions; capable of maintaining adequate concentration and attention, maintaining regular attendance and sustaining an ordinary work routine without special supervision.  She found he is able to make simple work-related decisions; able to interact appropriately with the public, supervisors and coworkers and able to respond appropriately to routine work changes and be aware of normal work hazards.  (AR 492.)

On April 19, 2003, a psychiatric evaluation was performed by Ekram Michiel, M.D.  (AR 553-556.)  Claimant complained that he hears voices, that the radio and TV are talking to him, and know what he is thinking.  (AR 553.)  On examination, he was cooperative, speech was normal, some behavioral abnormalities, deficient intellectual functioning, sad mood, scared mood, affect was flat but he was goal oriented.  (AR 554-555.)  Dr. Michiel diagnosed schizophrenia, undifferentiated type.  (AR 555.)  He opined that claimant was unable to maintain adequate attention and concentration and to carry out one or two step simple job instructions.  (AR 556.)  He also opined that claimant is unable to relate and interact appropriate with coworkers, supervisors and the general public.  (AR 556.)

**Hearing Testimony**

Claimant testified that he goes to adult school three hours a week, taking computer classes.  (AR 43.)  Claimant lives with his father who works full time.  (AR 43.)  Claimant takes care of his personal needs like eating, dressing, and grooming.  (AR 43.)  He cooks his own meals two times a day.  (AR 44.)  He washes dishes every day, does his laundry and various other chores.  (AR 44-45.)  He drives and grocery shops.  (AR 45.)  He said he does not drink now, but use to drink twice a week.  (AR 46.)  Claimant testified that he is only taking 3 hours of class a week to make sure he is comfortable in the environment.  (AR 47.)  He does not have problems with hallucinations.  (AR 48.)  He does not have any friends, but he socializes on break at school.  (AR 48-49.)  He visits with family twice a week.  (AR 49.)  He said that the television and radio talk to him, about once a week.  (AR 49-50.)  Claimant is on medication which his father makes sure he takes.  (AR 50.)  His father gives it to him every moring

3

before he goes to work.  (AR 50.) He use to hear voices that got louder and louder.  (AR 52-53.)  He has side effects from his medication - drooling and drowsiness.  (AR 55.)  He is drowsy for about six hours after he takes his medication.  (AR 56.)

He is doing well in school and goes one night a week for 3 hours.  (AR 54.)  He is hoping that he will be able to go full time and get a job.  (AR 54.)  He works on the computer about 4 hours a day at home.  (AR 59.)  Claimant said he believes his medication is helping and he is ready for more classes. (AR 59.)

## **ALJ Findings**

In his October 30, 2003 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled.  (AR 15.)  In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 23):

1.  The claimant was found to be disabled within the meaning of the Social Security Act beginning October 30, 1997, and has not engaged in substantial gainful activity since that date.

2.  The medical evidence establishes that the claimant currently suffers from psychotic, schizophrenia, and history of drug and alcohol abuse, which are severe impairments based upon the requirements in the Regulations 20 CFR §416.920(b).

3.  The medical evidence establishes the claimant does not have an impairment or combination of impairments which meet or medically equal the severity of an impairment listed in Appendix 1, Subpart P, Regulation No. 4.

4.  The impairments present as of December 24, 1998, the time of the most recent favorable medical decision that the claimant was disabled, was schizophrenic, paranoid and other functional psychotic disorder, which met the requirements of listing 12.03 A & B, Appendix 1, Subpart P, Regulations No. 4.

5.  The medical evidence establishes that since June 2002 there has been improvements in the claimant's medical impairments.

6.  The medical improvement is related to the claimant's ability to work. 20 CFR §416.994(b).

4

7.    The medical evidence establishes that the claimant currently has an impairment or combination of impairments that is severe, but no longer meets listing 12.03.

8.    The claimant's subjective complaints of a continued inability to engage in any work activity due to his impairments are not credible to the degree alleged.

9.    Since June 2002, the claimant has had the residual functional capacity to perform work at all exertional levels while avoiding complex tasking.  20 CFR §416.945.

10.    The claimant has no past relevant work history.

11.    Beginning June 1, 2002, the claimant has had the residual functional capacity to perform work at all exertional levels, reduced by his inability to perform more than simple one to two step tasking, which would not significantly erode the occupational base. SSR 85-15.

12.    As of June 2002, the claimant was 24 years old, defined as a younger individual, and he is presently 26 years of age.  20 CFR §416.963.

13.    The claimant has a GED high school equivalent education.  20 CFR §416.964.

14.    The claimant does not have any acquired work skills, as he has no past relevant work history.

15.    Considering the range of work at all exertional levels which the claimant is still functionally capable of performing, in combination with his age, education and work experience, and using section 204.00, Appendix 2, Subpart P, Regulations no. 4 as a framework for decision making, the claimant is not disabled.

16.    The claimant's disability ceased on June 1, 2002.  20 CFR 416.994 (b).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating

1   physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402

2   U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119,

3   n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as

4   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

5       The record as a whole must be considered, weighing both the evidence that supports and detracts

6   from the Commissioner's conclusion.  *Jones,* 760 F.2d at 995.  If there is substantial evidence to support

7   the administrative findings, or if there is conflicting evidence that will support a finding of either

8   disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d

9   1226, 1229-1230 (9th Cir. 1987).

10      Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

11  determine whether it is:  (1) based on proper legal standards; and (2) supported by substantial evidence

12  in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

13      Plaintiff contends the ALJ erred by: (1) rejecting the opinions of the consultative examining

14  psychiatrist and the state agency non-examining physician, (2) finding claimant capable of performing

15  work at all exertional levels, (3) using the grids for decision making, and (4) rejecting claimant's

16  credibility.

## The Standard for Medical Improvement

18      Under the Social Security Act, plaintiff's benefits may be terminated only upon a showing of

19  substantial evidence that:  (A) there has been any medical improvement in the individual's impairment

20  or combination of impairments (other than medical improvement which is not related to the individual's

21  ability to work), and  (B) the individual is now able to engage in substantial gainful activity.  42 U.S.C.

22  § 423(f)(1).  "Medical improvement" occurs when there "is any decrease in the medical severity of [the

23  claimant's] impairment(s) which was present at the time of the most recent favorable medical decision

24  that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1). Plaintiff's

25  medical improvement is thus to be assessed by comparing the current severity of his impairment with

26  its severity at the time of the last medical assessment finding disability.  *Id.* § 416.994(b)(7).

27  Additionally, before plaintiff's benefits can be terminated, any improvement in his medical condition

28  must be accompanied by an increase in his "functional capacity to do basic work activities." *Id.* §

6

416.994(b)(2).  According to the regulations, plaintiff's medical improvement must be manifested in terms of improved signs, symptoms, or laboratory reports before the improvement will strip plaintiff of his disability status. 20 C.F.R. § 416.994(b)(1).

The Record shows that the state agency determined claimant met the criteria for Listing 12.03 as of October 30, 1997 due to schizophrenia, paranoid and other functional psychotic disorders.  (AR 18, 513.)  As a result, claimant was granted supplemental security income benefits effective October 30, 1997.  (AR 18.)  In June 2002, there was a determination that claimant's condition had medically improved and he was able to work.  (AR 104.)

**Limitations Assessed by the Consultative Examiner and Claimant's Credibility**

Claimant criticizes the ALJ for finding claimant medically improved, given the medical history in this case.  Claimant argues that the ALJ erred in rejecting the consultative examiner's limitations that the claimant is unable to relate and interact appropriately with coworkers, supervisors and the general public.

Claimant was seen for a consultative examination by Ekram Michiel, M.D.  Dr. Michiel is a board certified psychiatrist.  He performed a psychiatric examination and made detailed findings as to the nature and severity of claimant's impairments. 20 C.F.R. §416.927(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("To the extent that the nontreating physician's opinion rests on objective clinical tests, it must be viewed as substantial evidence.")

The ALJ, however, did not adopt Dr. Michiel's limitations. The ALJ summarized the evaluation by Dr. Michiel:

> "Claimant under went a consultative psychiatric evaluation on April 19, 2003, performed by Ekram Michiel, M.D., who noted claimant denied use of alcohol or illicit drugs.  Claimant alleged he was hearing voices, and stated he did not go out because he was afraid of people.  Dr. Michiel diagnosed schizophrenia, undifferentiated type, with a GAF of 55, indicating moderate symptoms or moderate difficulty in social or occupational functioning.  Dr. Michiel concluded claimant was unable to maintain adequate attention and unable to carry out one or two step job instructions."  (AR 19.)

The ALJ stated he rejected the opinion of Dr. Michiel as to the limitations because:

> "[M]ental impairment cannot be objectively tested and must rely on

7

1    claimant's veracity.  Here claimant's credibility is quite poor.. . ."  (AR
     20.)
2

3    The ALJ then stated his reasons for not accepting the veracity of claimant.  The ALJ relied upon

4    claimant's "wide ranging" activities of daily living which he outlined:

5              "Claimant stated that he completed his G.E.D., and was presently taking
               computer training three hours a week (in a three hour block of
6              instruction).  Claimant stated he would like to get a degree and get a
               better job. Claimant testified he took care of all his own personal needs,
7              Claimant testified he cooks twice a day, and does the dishes.  Claimant
               stated he does the laundry, mops and vacuums, takes out the trash, and
8              shops once a week.  Claimant also stated he spends about four hours a
               day on his computer.  Claimant testified he has a driver's license without
9              restrictions, and drives twice a week.  Claimant also admitted he had used
               alcohol twice a week up until a month before the Hearing.  Claimant
10             stated he visits family members twice a week." (AR 19-20.)

11   The ALJ also noted inconsistencies in the evidence.  First he noted:

12             "Claimant initially testified he never had hallucinations, but later in the
               hearing stated he has had hallucinations about once a week for 3 years.
13             Claimant stated medications help, but he gets drowsy and is knocked out
               for three to four hours after taking the medications."  (AR 19-20.)
14

15   Then, the ALJ further noted other inconsistencies:

16             "For example, when claimant was being examined by the consultative
               psychiatrist, claimant denied that he was using alcohol (while the medical
17             evidence of record shows a history of substance abuse).  Furthermore, at
               the hearing, claimant testified he was actively using alcohols twice a
18             week up until a month ago (which means he was using alcohol during the
               same timeframe where he denied such use to the psychiatric consultant)."
19             (AR 21) (evidence citations omitted).

20   The ALJ relied upon the inconsistency in the medical evidence from what claimant reported to the

21   consultative psychiatrist, particularly as it related to hallucinations:

22             "Additionally, at the hearing claimant first denied ever having
               hallucinations, but later changed his testimony to allege having them once
23             a week for the past three years.  Notwithstanding, I note that with the
               exception of only one entry last year, the majority of entries indicate
24             claimant denied hallucinations.'  (AR 21) (Emphasis and citations
               omitted).
25

26   The Record contains substantial evidence of the lack of hallucinations.  Progress notes repeatedly report

27   that claimant denied having hallucinations.  The ALJ noted the emphasis the consultative examiner

28   placed on the occurrence of hallucinations:

                                          8

> "In spite of this longitudinal history, I note that the hallucinations were
> nonetheless emphasized by the psychiatric consultative examiner when
> formulating his opinion, and the supposed 'lack of alcohol' use was also
> noted by that examiner." (AR 21.)

Thus, there is substantial evidence in the Record that the claimant's reports to the consultative examiner did not accurately reflect claimant's symptoms and impairment.

Moreover, the Record also contains substantial evidence that claimant was able to engage in social interaction. The progress notes repeatedly report good socialization, claimant was able to attend school and complete his G.E.D, and take adult classes. None of these activities were reported to Dr. Michiel. Thus, the ALJ found that claimant's poor credibility undermined Dr. Michiel's limitations. A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)). When a plaintiff's conduct undermines his credibility, "it is reasonable to question the reliability of a physician's opinion based on [plaintiff's] complaints." *Brawner*, 839 F.2d at 434. The ALJ reasonably rejected Dr. Michiel's limitations due to its unreliable evidentiary support. The ALj stated clear and convincing reasons for rejecting claimant's veracity. The Court does not find error.

Claimant argues that the ALJ ignores the gravity of the medical records and the claimant has no social experience whatsoever except for his family and the delicate equilibrium that the family has developed to enable claimant to survive without incident. (Opening Brief p.3:6-15.)

There is substantial evidence in the Record to support improvement in his condition and the ALJ's finding that claimant may perform substantial gainful activity. As stated, the Record indicates that claimant has good socialization, was able to attend school and complete his GED, and take adult classes. The treatment notes which report claimant has "good socialization" are not qualified in the manner argued by claimant. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. at 399. Where the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th

Cir. 1999); *Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999). Thus, if the record as a whole

offers substantial evidence to support the administrative findings, or if there is conflicting evidence that

will support the findings, the finding of the Secretary is conclusive. *Sprague v. Bowen*, 812 F.2d 1226,

1229-1230 (9th Cir. 1987). Here, the evidence supports the ALJ's finding of good socialization.

### Residual Functional Capacity and Claimant's Mental Limitations

Claimant argues that the ALJ's finding that claimant could perform work at all exertional levels

is not supported by substantial evidence in the Record.

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial

gainful activity due to a medically determinable physical or mental impairment which has lasted or can

be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity.

20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote

a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R.

§§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light,

medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found

that plaintiff had the residual functional capacity for all levels of exertional work.

The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the

medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.

1995). State agency medical consultants are highly qualified physicians who are experts in the

evaluation of the medical issues in disability claims under the Act. *See* Social Security Ruling 96-6p.

The ALJ extensively analyzed the medical records and claimant's testimony to satisfactorily

determine claimant was no longer under a continuing disability. It is clear from these findings that the

ALJ analyzed the records and medical opinions. The residual functional capacity is supported by the

medical opinions of Drs. Middleton and Vea. Their opinions reviewed and relied upon the treatment

records. Thus, there is substantial evidence in the Record to support the ALJ's decision. The Court does

not find error in the ALJ's assessment of residual functional capacity.

Claimant also argues that Social Security Ruling (SSR) 85-15 provides the proper legal standard

for determining whether he is disabled, and that under SSR 85-15 he is entitled to benefits based on his

mental limitations. *See* Social Security Ruling 85-15, *Titles II and XVI--Capability to do Other Work--The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* ("SSR 85-15").  SSR 85-15 states that benefits may be awarded where a claimant suffers from a "substantial loss" of the abilities "to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15 at 94.   See SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.").   Claimant argues that "[i]t is clear from the records that when plaintiff is placed in a social environment, that he becomes nervous and is unable to concentrate." (Opening brief, p.7:11-12.)

There is substantial evidence in the Record that claimant can perform simple one or two-step job instructions.  Medical Consultant Dr. Vea functionally assessed claimant capable of understanding, remembering and carrying out simple instructions, and capable of maintaining adequate concentration and attention, maintaining regular attendance and sustaining an ordinary work routine without special supervision.  Dr. Vea also found claimant able to make simple work-related decisions; able to interact appropriately with the public, supervisors and coworkers and able to respond appropriately to routine work changes and be aware of normal work hazards.  (AR 492.)  Dr. Middleton found claimant capable of understanding, remembering and carrying out simple instructions, able to concentrate and attend appropriately in an eight-hour workday and forty hour workweek; and would be able to relate and adapt within the unskilled work environment, but should avoid complex and technical tasks.  (AR 494, 511.)

Claimant argues that the Disability Hearing Officer who reviewed the case concluded that plaintiff "retains the capacity to perform one to tow step non complex tasks <u>with no public contact</u>." (AR 1126) (Emphasis added).

The Disability Hearing Officer's determination was not binding because claimant requested review of the decision by an ALJ.  20 CFR §416.1421.  All issues which were not decided entirely in claimant's favor were subject to review.  20 CFR §416.1446(a) ("The issues before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were

1    not decided entirely in your favor.")  The hearing before the administrative law judge is essentially a de

2    novo one where the claimant can appear and present witnesses and evidence.  *Adams v. Harris*, 643 F.2d

3    995, 997 (4th Cir. 1981); *see  Smith v. Barnhart*, 222 F.Supp.2d 78, 82 (D.Me. 2002) ("provides that the

4    ALJ may reexamine a favorable determination if evidence presented during the hearing calls the

5    determination into question.")

6                              **Use of the Grids**

7            Claimant argues that the ALJ erred finding that claimant's ability to perform more than simple

8    one or two step tasking does not significantly erode the occupational base and relying upon the Grids

9    as a framework, instead of employing a vocational expert.

10           In 1978, the Secretary of Health and Human Resources promulgated the Medical-Vocational

11   Guidelines (also known as "grids") to improve the efficiency and uniformity of Social Security benefits

12   determination.  *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir.

13   1988).  The grids take account of various vocational factors, such as age, education and work experience,

14   and the claimant's residual functional capacity.  20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985).

15           The grids relieve the SSA of the need to rely on vocational expert testimony in cases where the

16   underlying findings of fact correspond precisely to the criteria of a specific rule in the guidelines.

17   *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952 (1983).   Where a claimant's qualifications

18   correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether

19   work exists that the claimant could perform.  *Id.*  The Grids are used to determine whether substantial

20   gainful work exists for the claimant with respect to substantially uniform levels of impairment. *See*

21   *Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir.2000). When they do not adequately take into account

22   claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert

23   must be consulted.  *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).  When a claimant suffers

24   from both exertional and nonexertional limitations, the grids are only a framework and a VE must be

25   consulted.  *Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000).

26           Here, the claimant suffers solely from a non-exertional impairment.  The ALJ used the grids as

27   a framework to determine whether significant number of jobs exist in the economy which claimant could

28   perform.  The ALJ found that claimant could perform a significant number of jobs based on the rule

1    204.00 in Appendix 2 of Subpart P, Regulations No. 4.   The occupations in Part 404, Subpart P,

2    Appendix 2, 204.00, are unskilled occupations.

3            "Unskilled work is work which needs little or no judgment to do simple
           duties that can be learned on the job in a short period of time. The job

4           may or may not require considerable strength. For example, we consider
           jobs unskilled if the primary work duties are handling, feeding and

5           offbearing (that is, placing or removing materials from machines which
           are automatic or operated by others), or machine tending, and a person

6           can usually learn to do the job in 30 days, and little specific vocational
           preparation and judgment are needed." 20 C.F.R. §416.968(a).

7

8    Unskilled work requires no skills at all and involves only simple duties.   Thus, the inability to perform

9    complex job tasks is already contemplated by the Grid Rules.   Since the ALJ used these Grid Rules, he

10   was not required to obtain the testimony of a vocational expert. See SSR 85-15 ("The basic mental

11   demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to

12   understand, carry out, and remember simple instructions; to respond appropriately to supervision,

13   coworkers, and usual work situations; and to deal with changes in a routine work setting.").

14           Thus, unskilled work is defined as simple tasks, which claimant was found capable of

15   performing.   Therefore, claimant's limitations to simple and routine work would not prevent him from

16   performing unskilled occupations as stated in the grids.   Substantial evidence supports the ALJ's finding

17   that claimant could perform the full range of unskilled work at all exertional levels.

18                               **Trial work period**

19           Claimant argues that the case should be remanded for the purpose of allowed a trial work period

20   to assess the success or failure of plaintiff's ability to sustain social contact. (Opening Brief, p. 7:18-21.)

21           As the Commissioner points out, there is no authority for trial work periods under Title XVI of

22   the Social Security act.   20 CFR §416.994(b).   Pursuant to Title II of the Social Security Act, which is

23   not the claimant's case, a person may engage in a trial work period and still be considered disabled.   20

24   CFR §414.1592 ("the trial work period is a period during which you may test your ability to work and

25   still be considered disabled.")   Claimant does not point to a comparable provision under Title XVI.

26   Thus, the Court denies to remand the case for a trial work period.

27   /////

28   /////

                                       13

**CONCLUSION**

The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Daniel L. Portillo.

These findings and recommendations are submitted to United States District Judge Oliver W. Wanger pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304.  Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    July 14, 2005**                          **/s/ Lawrence J. O'Neill**
b9ed48                                                   UNITED STATES MAGISTRATE JUDGE

14